William W. Hixson v. Carqueville Lithographing Company.

Gen. No. 4,366.

1. ABSTRACT—*what, should contain.* An abstract should be sufficiently full to show all errors upon which a party relies for reversal.

2. NEWLY DISCOVERED EVIDENCE—*when new trial will not be granted for.* A new trial will not be granted upon the ground of newly discovered evidence where the affidavits which set up the same are indefi-

nite and seek merely an opportunity to contradict a witness upon a matter but remotely important and brought out upon cross-examination and which fail to show diligence in seeking for such proof prior to the trial, which has resulted adversely.

Proceeding commenced before justice of the peace. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

H. S. HICKS, for appellant.

· A. E. FISHER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Carqueville Lithographing Company, a Chicago corporation, brought this action before a justice of the peace to recover a balance of $72.50, claimed to be due it for lithographing certain maps. It recovered that amount, and defendant appealed to the Circuit Court, where a verdict for defendant was set aside, and on a second trial, plaintiff again had verdict and judgment for said sum. Defendant again appeals.

Plaintiff agreed to lithograph in black for defendant, 100 maps of Greater Green Bay, Wisconsin, for $145. Plaintiff claims the contract was that it was to deliver said 100 maps to the Eger Map Mounting Company of Chicago, with whom defendant had already contracted to mount and color 50 of said maps for $41.75; that when said 50 maps were so colored and mounted, plaintiff was to send to the Eger Company for them and ship them C. O. D. to defendant at Green Bay, accompanied by its bill for lithographing the entire 100 maps and the bill of the Eger Company for mounting and coloring 50, defendant saying he did not wish two C. O. D. collections on the same job. It was plaintiff's claim that defendant directed the remaining 50 to be left at Eger's till he could find out how many more he would want to color and mount. Defendant claimed that plaintiff was to send 50 to Eger's to be colored and mounted and then ship them to Green Bay, and that plaintiff was to retain the other 50 subject to defendant's order, and

that he afterwards ordered 20 more from plaintiff and did not receive them. The preponderance of the proof clearly establishes that the contract was as plaintiff contends; and defendant on his cross-examination receded from his testimony in chief, and admitted that plaintiff was to deliver the entire 100 maps to the Eger Company, and was to receive back 50 colored and mounted and ship them to defendant at Green Bay, C. O. D., with a bill for the entire sum due both houses, and he finally testified that when the contract with plaintiff was made, nothing was said about the custody or the future control of the other 50 maps. Defendant improperly omitted that part of the cross-examination from his abstract. On this evidence the jury must have found that the contract was as plaintiff claimed.

Plaintiff lithographed the 100 maps in black and delivered them all to the Eger Company, and the latter colored and mounted 50, and delivered said 50 to plaintiff, and plaintiff shipped them to defendant at Green Bay, and defendant received them there. Plaintiff sent with them the Eger Company's bill for $41.75, but by an error in plaintiff's office, its bill was not made out for $145 for lithographing the 100 maps, as both sides agree the contract was it should be made out, but its bill was made out for $72.50 for lithographing the 50 maps then shipped. That bill was paid, and this sum is to recover the remaining $72.50 omitted from the bill by mistake. Under the contract above stated, the 50 maps which were not then to be delivered and mounted, were properly delivered to and left with the Eger Company, and plaintiff's responsibility for them then ceased, and plaintiff's right to the entire $145 accrued when the 50 mounted and colored maps reached defendant at Green Bay. There was conflicting testimony as to things afterwards said and done and agreed to be done by the parties, and as to whether plaintiff afterwards had 18 or 20 of these maps in its possession; but if anything happened after he received the 50 maps at Green Bay to change defendant's liability, the burden was upon him to show it, and he had no preponderance of proof on that

subject. We would not be warranted in disturbing the conclusion of the jury and the trial judge upon the facts.

Defendant argues that the court erred in its action upon certain instructions given and upon others refused. The abstract does not show that defendant excepted to any of said rulings, and it is the duty of a party who brings a cause to this court to file an abstract sufficiently full to show all the errors upon which he relies for a reversal. In the absence of any exception thereto shown in the abstract, we think it sufficient to say that we have examined the given instructions and find them not open to the objections made against them, and that the court did not err in refusing certain instructions offered by defendant. Defendant argues the court erred in giving of its own motion an instruction which authorized the jury to allow defendant to recoup against plaintiff's claim any damage he may have sustained by a failure of plaintiff to ship the maps pursuant to the contract; and defendant says he did not ask such an instruction and offered no proof which justified it. The fact is defendant did introduce proof to show the amount he had been so damaged, but he has omitted it from his abstract; and neither abstract nor record shows that the court gave said instruction of its own motion, nor did defendant except to it.

One ground on which defendant asked for a new trial was newly discovered evidence. He filed the affidavit of Joseph Baxa, who therein stated that he is now and for the last eight years has been connected with the Eger Map Mounting Company, and then stated certain facts bearing upon this case; and the affidavit of C. B. Eger, who seems to have been at one time at the head of the Eger Company, to certain facts; and his own affidavit. Baxa stated that about five years ago the Eger Company mounted and colored certain maps and atlases of Greater Green Bay for defendant and immediately after completing that work delivered said maps and atlases to plaintiff and has not had any of said maps in its possession for the past four years. He does not say to how many maps he refers, and appar-

ently it is only to the 50 the Eger Company mounted and colored. But if he does refer to the entire 100, then as they mounted and colored and delivered the 50 maps five years ago, and he says have had none in their possession for the past four years, that does not trace to plaintiff those which remained with the Eger Company a year. The affidavit of C. B. Eger is still more indefinite, and seems to refer only to those maps and atlases which they mounted and colored. The only respects in which these affidavits state matter which apparently would have been material if produced at the trial is that plaintiff's vice-president, on cross-examination by defendant, testified that some two weeks before the last trial of this case, at the suggestion of plaintiff's attorneys, he went to the Eger Map Mounting Company and got what maps he could of that company, about a dozen in all, and shipped them to plaintiff's attorneys at Rockford, to be tendered to defendant. Baxa states in his affidavit that the Eger Company has not had any of said maps in its possession for the past four years, nor has any one received any of said maps from the Eger Company within the last four years, and Eger in his affidavit makes a like statement with reference to himself personally. But the matter so sought to be contradicted was only incidentally important, and was not introduced by plaintiff but was drawn out by defendant on cross-examination, and a new trial will not be granted to enable the defeated party to contradict a witness in a matter but remotely important and brought out only on cross-examination. Besides, defendant did not show diligence. He says when this suit was first begun he went to Chicago and made diligent search and inquiry for Charles B. Eger and the Eger Map Mounting Company and did not find them; but he does not state what he did, except to go to the former place of business of the Eger Company and find it was no longer located at that place. He should have stated what efforts he made, so that the court could determine whether he used due diligence to find these parties. Did he examine a directory for their names? Defendant's testimony showed that when

the bargain with plaintiff was made the Eger Company had a telephone in use. Did defendant look for that company in a telephone directory? Did he address it through the mails to see if the government knew where they were? Did he inquire at the post office? The proof shows defendant knew the business of plaintiff and of the Eger Company brought them into business relations with each other. Did he inquire of plaintiff for the location of the Eger Company? Defendant does not state in his affidavit that he sought any of these obvious sources of information. We are of opinion that defendant did not show the exercise of diligence to discover what proof he could get from the Eger Company.

The judgment is affirmed.                    *Affirmed.*